UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTOPHER V.,[1]

          Plaintiff,

    v.                                                                  23-CV-585-LJV
                                                                            DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____

On June 23, 2023, the plaintiff, Christopher V. ("Christopher"), brought this action

under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On September 15, 2023, Christopher moved for judgment on the

pleadings, Docket Item 4; on November 15, 2023, the Commissioner responded and

cross-moved for judgment on the pleadings, Docket Item 7; and on November 29, 2023,

Christopher replied, Docket Item 8.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Christopher applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Christopher's motion and grants the Commissioner's cross motion.[3]

### STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation modified) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation modified) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.   THE ALJ'S DECISION

On August 29, 2022, the ALJ found that Christopher had not been under a disability from August 1, 2016, through the date of the decision.  *See* Docket Item 3 at 26.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id.* at 19–20.

At step one, the ALJ found that Christopher had not engaged in substantial gainful activity since August 1, 2016, his alleged onset date.  *Id.* at 20.  At step two, the ALJ found that Christopher suffered from six severe, medically determinable impairments: "knee degeneration; post-traumatic stress disorder; an affect disorder; an anxiety disorder; spinal degeneration; and a substance use disorder."  *Id.* at 21.

At step three, the ALJ found that Christopher's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.*  More specifically, the ALJ found that Christopher's physical impairments did not meet or medically equal listing 1.15 (disorder of the skeletal spine resulting in compromise of a nerve root), 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or 1.18 (abnormality of a major

3

joint in any extremity).  *Id.*  Likewise, the ALJ found that Christopher's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders)*,* 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma and stressor-related disorders).  *Id.*  In assessing Christopher's mental impairments, the ALJ found that Christopher was mildly impaired in interacting with others and in adapting or managing himself; the ALJ also found that Christopher was moderately impaired in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace.  *Id.* at 21–22.

The ALJ then found that Christopher had the residual functional capacity ("RFC")[4] to "perform medium work as defined in 20 C[.]F[.]R[. §§] 404.1567(c) and 416.967(c) except [that Christopher] is limited to simple, routine, [and] repetitive tasks." *Id.* at 23.  And at step four, the ALJ found that Christopher could no longer perform any past relevant work.  *Id.* at 25.  But given Christopher's age, education, and RFC, the ALJ found at step five that Christopher could perform substantial gainful activity as a hand packer or machine packer.  *Id.* at 25–26; *see Dictionary of Occupational Titles* 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 920.685-078, 1991 WL 687942 (Jan. 1, 2016).  The ALJ therefore found that Christopher had not been under a disability from his alleged onset date through the date of the decision.  *See* Docket Item 3 at 26; *see also id.* at 20.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.    ALLEGATIONS

Christopher argues that the ALJ erred in four ways.  *See* Docket Item 4-1 at 12–21.  First, he argues that the ALJ failed to account for limitations in the opinion of Hongbiao Liu, M.D.—an opinion that Christopher asserts the ALJ found "persuasive." *Id.* at 12–14.  Second, he argues that the ALJ made the same error with respect to the opinion of Janine Ippolito, Psy.D.  *Id.* at 14–16.  Third, he argues that the ALJ failed to properly evaluate the opinions of Megan Mogavero, NP.  *Id.* at 16–18.  Finally, he argues that the ALJ failed to develop the record with treatment notes from Horizon Health Services ("Horizon").  *Id.* at 18–21.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A. Failure to Account for Limitations in Dr. Liu's and Dr. Ippolito's Opinions

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [an ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024).  So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 416.945; *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's

functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### 1. Dr. Liu's Opinion

On September 10, 2020, Dr. Liu completed an internal medicine examination of Christopher. *See* Docket Item 3 at 566–69. Dr. Liu diagnosed Christopher with, among other things, "[c]hronic pain, status post low back and right knee surgery." *Id.* at 569. And Dr. Liu concluded that Christopher had mild-to-moderate limitations in "prolonged walking, bending, kneeling, squatting, stair[-]climbing, carrying heavy weights, [and] prolonged sitting[] and standing." *Id.*

Christopher argues that despite finding Dr. Liu's opinion to be "persuasive," the ALJ failed to account in the RFC for the mild-to-moderate limitations about which Dr. Liu opined. *See* Docket Item 4-1 at 12. But the ALJ did not find Dr. Liu's opinion persuasive; instead, the ALJ called Dr. Liu's opinion "vague" and said that he was persuaded by Dr. Liu's "exam show[ing] [that Christopher] c[ould] perform medium tasks." Docket Item 3 at 24. The ALJ incorporated that finding—that Christopher could perform medium work—into the RFC. *See id.* at 23. And that finding was supported by opinion evidence in the record as well.

For example, the ALJ considered the opinions of Gary Ehlert, M.D., and G. Wang, M.D., both state agency medical consultants. *See* Docket Item 3 at 24; *see also id.* at 74, 103. Dr. Ehlert opined that Christopher could sit, stand, or walk for six hours in an eight-hour workday and could carry up to twenty-five pounds frequently and up to fifty pounds occasionally. *Id.* at 73. Dr. Ehlert also concluded that Christopher had no postural, manipulative, or environmental limitations. *Id.* And when Dr. Wang reviewed

6

Christopher's medical records, he found near identical limitations. *Id.* at 101–03. Certainly, an individual with those limitations could perform medium work.[5]

What is more, even if the ALJ had found Dr. Liu's opinion persuasive, the mild-to-moderate limitations in that opinion would not conflict with the RFC. To the contrary, courts in this Circuit repeatedly have found a restriction to medium work sufficient to account for mild-to-moderate exertional limitations. *See, e.g.*, *John M. v. Comm'r of Soc. Sec.*, 2025 WL 395909, at *8 (W.D.N.Y. Feb. 5, 2025) ("Finding[] . . . that [a p]laintiff has moderate physical limitations . . . may be consistent with performing medium work."); *Cain S. v. Comm'r of Soc. Sec.*, 2022 WL 17252414, at *4 (W.D.N.Y. Nov. 28, 2022) ("Indeed, courts in this Circuit have also concluded [that] an RFC for medium work [is] consistent with mild[-]to[-]moderate limitations." (citation modified)); *Christopher T. L. v. Comm'r of Soc. Sec.*, 2021 WL 9629024, at *5 (W.D.N.Y. Jan. 21, 2021) ("Courts have found that moderate exertional limitations actually support an RFC for light or medium work.").

In sum, the ALJ appropriately addressed Dr. Liu's opinion and exam findings, and the RFC limiting Christopher to medium work accounted for the limitations in Dr. Liu's opinion. *See* Docket Item 3 at 23.

### 2. Dr. Ippolito's Opinion

On the same day that Dr. Liu performed his physical examination, Dr. Ippolito completed a psychiatric evaluation of Christopher. *See* Docket Item 3 at 562–65. She

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). Medium work may also involve "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

opined that Christopher had no limitations in understanding, remembering, or applying simple and complex instructions; interacting appropriately with others; sustaining a routine and regular attendance; and maintaining hygiene and dressing appropriately. *Id.* at 564. She also found that Christopher had only mild limitations in using reason and judgment to make work-related decisions and in sustaining concentration and performing at a consistent pace. *Id.* On the other hand, Dr. Ippolito opined that Christopher was moderately limited in regulating emotions, controlling behavior, and maintaining well-being, and in being aware of normal hazards and taking appropriate precautions. *Id.* She concluded that her "evaluation appear[ed] to be consistent with psychiatric and substance abuse problems" that "may significantly interfere with [Christopher's] ability to function on a daily basis." *Id.*

Christopher argues that despite finding Dr. Ippolito's opinion "persuasive," the ALJ failed to address limitations in that opinion—that is, mild limitations in "using reason and judgment to make work-related decisions and concentrating and performing a task at a consistent pace" and moderate limitations in "regulating emotions, controlling behavior, and maintaining well-being and demonstrating awareness of normal hazards and taking precautions." Docket Item 4-1 at 14–15. But the RFC limited Christopher to work that involved only simple, routine, and repetitive tasks. *See* Docket Item 3 at 23. And courts in this Circuit have repeatedly found such RFC restrictions sufficient to account for mild-to-moderate limitations in those areas. *See, e.g., T.L.E. v. Bisignano*, 2025 WL 2522510, at *3 (W.D.N.Y. Sep. 2, 2025) ("Up to moderate limitations in the functional areas of regulating emotion, controlling behavior, and maintaining well-being may be accounted for in an RFC . . . that limits a claimant to simple, routine work.");

8

*Arthur M. v. Saul*, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) ("[T]he restrictions imposed by the RFC, including that [the] plaintiff can perform only simple and routine tasks . . . are sufficient to account for [the] plaintiff's moderate limitations with regard to completing a normal workday or workweek without interruption as well as performing at a consistent pace without an unreasonable number and length of rest periods."); *see also Denise Marie T.-W. v. Comm'r of Soc. Sec.*, 2024 WL 4162490, at *6 (W.D.N.Y. Sep. 12, 2024) ("Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work . . ..").

So the limitations incorporated in the RFC—that Christopher could perform only "simple, routine, [and] repetitive tasks"—accounted for the limitations in Dr. Ippolito's opinion.  *See* Docket Item 3 at 23.

## B.  Failure to Evaluate NP Mogavero's Opinion

For claims filed on or after March 27, 2017, such as Christopher's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (citation modified) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive he finds the medical opinions in the case record." *Id.*

The Code of Federal Regulations lists five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency,

9

purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  An ALJ is required to "explain how [he] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [he] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1).  As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(2).  In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record.  *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On June 15, 2021, NP Mogavero completed a medical examination for employability assessment.  *See* Docket Item 3 at 1124–25.  She opined that Christopher had no limitations in standing, sitting, or using his hands and only moderate limitations in walking, lifting, carrying, pushing, pulling, and bending.  *Id.* at 1125.  She also opined that Christopher had no limitations in any area of mental functioning.  *Id.*

10

A little more than seven months later, on February 2, 2022, NP Mogavero completed a primary source statement.  *See* Docket Item 3 at 961–68.  On that form, NP Mogavero opined that Christopher could sit or stand for only thirty minutes at a time and for less than two hours in an eight-hour workday, required ten-minute walking breaks every twenty minutes, and needed to shift positions at will.  *Id.* at 962–63.  She also opined that Christopher's mental impairments would significantly preclude his work performance to various degrees in nearly all areas of functioning.  *See id.* at 966–67.

The ALJ found that NP Mogavero's opinions were "not persuasive."  *Id.* at 24.  In making that finding, the ALJ noted that NP Mogavero limited Christopher to "light tasks," which was contrary to "the record show[ing] that his condition improved."  *Id.*  And the ALJ explained that NP Mogavero's finding of "marked and extreme mental limits" was "not supported by the record of normal mental exams."  *Id.*

Christopher argues that the ALJ's explanation "fell far short of satisfying his . . . duty under the regulations."  Docket Item 4-1 at 17.  Christopher is correct.  The ALJ was required to explicitly discuss the consistency of NP Mogavero's opinion with the remainder of the record and how well NP Mogavero supported her opinion with explanations and medical evidence.  *See Spottswood*, 2024 WL 89635, at *1.  Because the ALJ did not do that here*, see* Docket Item 3 at 24, the ALJ erred*, see Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

The Court's inquiry does not end there, however.  An ALJ's error is harmless if "a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed."  *Id.* (citation modified) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  In other words, the Court may affirm the ALJ's decision if "the record

11

provides 'good reasons' for assigning 'little weight' to" NP Mogavero's opinion. *See Estrella*, 925 F.3d at 95 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2014)). And the record here does just that.

To begin, NP Mogavero's opinions were inconsistent with other opinion evidence in the record. For example, with respect to Christopher's physical functioning, Dr. Liu opined that Christopher had only mild-to-moderate limitations in "prolonged walking, bending, kneeling, squatting, stair[-]climbing, carrying heavy weights, [and] prolonged sitting[] and standing." *See* Docket Item 3 at 569. Similarly, Drs. Ehlert and Wang found that Christopher could sit, stand, and walk for six hours in an eight-hour workday, could lift or carry up to fifty pounds occasionally and twenty-five pounds frequently, and would have no postural or manipulative limitations. *Id.* at 73–74, 101–03. Certainly, those limitations were a far cry from the disabling limitations that NP Mogavero found. *Compare id.* at 73–74, 101–03, 569, *with id.* at 962–64.

As to Christopher's mental functioning, Dr. Ippolito found no limitations in many areas and at most moderate limitations in others. *See id.* at 564. And A. Chapman, Psy.D., and M. Butler, Ph.D., state agency psychological and psychiatric consultants, respectively, found Christopher even less limited than Dr. Ippolito found, concluding that Christopher's mental impairments caused only mild limitations and were non-severe. *See id.* at 71, 116. Those limitations, then, differed dramatically from the limitations about which NP Mogavero opined as well. *Compare id.* at 71, 116, 564, *with id.* at 966–67.

12

Despite Christopher's argument to the contrary, *see* Docket Item 4-1 at 17, NP Mogavero's opinions also were inconsistent with each other.[6]  As noted above, in June 2021, NP Mogavero opined that Christopher had only moderate limitations in walking, lifting, carrying, pushing, pulling, and bending.  *See* Docket Item 3 at 1125.  Without any evidence of a significant decline in the interim, *see id.* at 904–28, NP Mogavero found only months later that Christopher could sit, stand, or walk for less than two hours in an eight-hour workday and that he was limited in nearly every area of mental functioning. *See id.* at 961–68.  So in addition to being inconsistent with the other opinion evidence, NP Mogavero's opinions differed dramatically from each other.

The ALJ also considered NP Mogavero's own treatment notes and examination results, concluding that they did not support her opinions.  *See id.* at 24.  Of course, as Christopher argues, *see* Docket Item 4-1 at 17, a conclusory statement that an opinion is not supported is inadequate to support an ALJ's determination, *see Drake v. Saul*, 839 F. App'x 584, 586 (2d Cir. 2022) (summary order).  But when an ALJ's reasoning can be gleaned from the record, additional discussion is not required.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he

---

[6] Christopher argues that the ALJ "failed to consider that NP Mogavero's opinions were consistent with each other."  Docket Item 4-1 at 17.  But NP Mogavero's June 2021 opinion found only moderate limitations in walking, lifting, carrying, pushing, pulling, and bending.  *See* Docket Item 3 at 1125.  In contrast, NP Mogavero's February 2022 opinion found, among other things, that Christopher could sit, stand, or walk for less than two hours in an eight-hour workday and that Christopher was limited in nearly every area of mental functioning.  *See id.* at 961–68.  So NP Mogavero's opinions were not "consistent with each other."  Docket Item 4-1 at 17.  Quite the opposite, her opinions were dramatically different.

considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").  In other words, while the ALJ could have discussed each treatment note and record supporting or not supporting NP Mogavero's opinions in greater detail, he was not required to do so.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered."  (citation modified)).  And after reviewing NP Mogavero's opinions in light of her medical records, the Court concludes that the ALJ did not err when he found the supportability factor to be lacking.  *See* Docket Item 3 at 799–928.[7]

In sum, a searching review of the record convinces this Court that the ALJ had "good reasons" for discounting NP Mogavero's opinions—namely, that they were inconsistent with and unsupported by the medical evidence, not to mention that they were inconsistent with each other.  *See Matta*, 508 F. App'x at 56; *Balsamo v. Chater*, 242 F.3d 75, 81 (2d Cir. 1998) ("[A]n ALJ is free to . . . choose between properly submitted medical opinions.").  And while the ALJ failed to explicitly discuss the regulatory factors in the detail required, his failure to do so was harmless error.  *See Loucks*, 2022 WL 218293, at *2.

---

[7] For example, at a visit with NP Mogavero on January 12, 2022, Christopher reported that "this is the best he has felt in a long[ ]time[,] as he has been exercising and eating healthy," Docket Item 3 at 924, and that he had no difficulty with walking, *id.* at 921.  At that same visit, NP Mogavero examined Christopher and found "5/5" strength in his upper and lower extremities, no issues with walking, and no evidence of anxiety, depression, or agitation.  *Id.* at 925.  Surely, those unremarkable reports and examination results do not support the disabling limitations NP Mogavero found only weeks later.

### C. ALJ's Duty to Develop the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (citation modified); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (An ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (citation modified)).

Christopher argues that the ALJ failed to develop the record with respect to treatment notes from Horizon. Docket Item 4-1 at 18–21. But "[w]here a record is otherwise complete, missing notes do not necessarily create an obvious gap in the record that an ALJ has to develop." *David C. v. Comm'r of Soc. Sec.*, 2024 WL 4347151, at *15 (W.D.N.Y. Sep. 30, 2024). And Christopher has not shown that any missing Horizon treatment notes constitute such a gap—for example, by making "an[] offer of proof concerning what supportive findings the alleged notes might contain." *Id.*; *see Curley v. Comm'r of Soc. Sec. Admin.*, 808 F. App'x 41, 43 (2d Cir. 2020) (summary order) ("[A]lthough Curley asserts that these records are critical, Curley did not provide them to the district court and does not describe their contents."); *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) ("[T]he potentially missing records here would consist of routine check-up and progress notes, with no indication that they

15

contain significant information."). Indeed, Christopher does not say what any missing treatment notes may contain or how, if at all, those notes would alter the ALJ's decision. *See* Docket Item 4-1 at 18–21.

Instead, Christopher says, the absence of treatment notes from Horizon must have been harmful because "the ALJ found that there was no evidence of treatment from around the time of [Christopher's] alleged onset date." *Id.* at 18. But as the Commissioner persuasively argues, that statement related only to Christopher's *physical* impairments. *See* Docket Item 7-1 at 16. Christopher's treatment at Horizon, on the other hand, involved only his mental impairments and substance abuse. *See* Docket Item 3 at 528–561. And the ALJ explicitly acknowledged that mental health treatment in his decision, noting that Christopher "ha[d] a history of treatment [with Horizon] in 2016–2018." *Id.* at 23. Christopher's argument is therefore belied by the record.

Finally, while an ALJ's duty to develop the record exists "even when a claimant is represented by counsel," *Perez*, 77 F.3d at 47, that duty is lessened when counsel assures the ALJ that the record is complete, *see, e.g.*, *Curley*, 808 F. App'x at 43 (summary order) ("Curley's argument that the ALJ failed to develop the record . . . fails. When the ALJ discussed the medical records with Curley and his attorney at the beginning of the hearing and asked whether anything was missing, Curley did not state that he had any [additional] records that needed to be obtained."); *Lucius R. v. O'Malley*, 2024 WL 1200181, at *16 (D. Conn. Jan. 22, 2024) ("An ALJ's duty to develop the record is not unlimited; he is required only to take all reasonable steps to do so, and he has taken reasonable steps to complete the medical record when he asks the claimant's

16

attorney at a hearing if the medical records are complete, and the attorney answers affirmatively." (citation modified)).  Christopher's counsel did just that here.  *See* Docket Item 3 at 37.

Indeed, counsel told the ALJ that he was "still awaiting records from Buffalo Neurosurgery Group" but that he did not "have any other outstanding requests."  *Id.* After giving counsel the requested two additional weeks to obtain those records, the ALJ asked whether there was "[a]nything else," and counsel said, "No, Your Honor."  *Id.* In light of that exchange, faulting the ALJ for failing to obtain additional mental health records is disingenuous at best.  *See David C.*, 2024 WL 4347151, at *13 ("[A]s a matter of fairness and judicial efficiency, counsel should not be permitted to game the system by asserting that the record is complete, and then, once an[] adverse decision has issued, crying foul.").

In sum, the complete record, including the opinion evidence, was sufficient to support the ALJ's findings.  *Cf. DeChirico v. Callahan*, 134 F.3d 1177, 1182–83 (2d Cir. 1998) (where "substantial evidence in the record" supported the claimant's account, "[b]ut there was also substantial evidence in the record from which the ALJ could have reasonably" ruled against the claimant, "we cannot say that the ALJ's finding . . . was unsupported by the record.").  And Christopher's failure to provide any missing records to this Court undermines his argument that missing records may have changed the result in his favor.  *See Curley*, 808 F. App'x at 43 (summary order).  The ALJ therefore did not err with respect to his duty to develop the record.

17

**CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Christopher's motion for judgment on the pleadings, Docket Item 4, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 7, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:      April 7, 2026
            Buffalo, New York


*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE